IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRIAN S. R.,                                )
                                            )
      Plaintiff,                        )
                                            )
v.                                          )
                                            )    Case No. 24-cv-00301-SH
                                            )
FRANK BISIGNANO,[1]                         )
Commissioner of Social Security,            )
                                            )
      Defendant.                        )

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brian S. R. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f.  In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.  For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

## I.    Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals).  The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot,

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[2] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[3] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257,

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.)

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits on July 26, 2022, with earlier protective filing dates. (R. 17, 198–210.) In his applications, Plaintiff alleged he has been unable to work since May 13, 2022, due to conditions including degenerative disc disease; pinching spinal cord; shoulder-to-finger numbness and loss of mobility; bursitis in elbow, knees, and ankle; Grave's disease; fatigue and tiredness; memory issues; heat intolerance; muscle spasm; irritability; constant joint pain; severe neck pain; weight gain; and depression. (R. 198, 200, 234.) Plaintiff was 49 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 29, 198, 200.) He has two years of college education and past relevant work as a painter and carpenter. (R. 67, 235.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 102–10, 123–29.) Plaintiff then requested and received a hearing before an ALJ. (R. 34–78, 135–36.) The ALJ denied benefits and found Plaintiff not disabled. (R. 17–29.) The Appeals

Council denied review on May 1, 2024 (R. 1–5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4]  Plaintiff now appeals.

### III.    The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through March 31, 2023.  (R. 19.)  The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (*Id.*)  At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the cervical spine; (2) lateral epicondylitis of the bilateral elbows; (3) left knee bursitis; (4) hypothyroidism; (5) essential hypertension; and (6) obesity.  (R. 19–20.)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment.  (R. 20.)

The ALJ then determined that Plaintiff had the RFC to perform light work with certain additional limitations.  (R. 20–21.)  The ALJ provided a recitation of the evidence that went into this finding.  (R. 21–27.)  At step four, the ALJ found Plaintiff unable to perform his past relevant work.  (R. 27.)  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Cashier II, Price Marker, and Housekeeping Cleaner.  (R. 27–28.)  Accordingly, the ALJ concluded Plaintiff was not disabled.  (R. 28–29.)

### IV.    Issues

On appeal, Plaintiff argues the RFC is not supported by substantial evidence.  (ECF No. 11 at 7.)  Specifically, Plaintiff asserts the ALJ failed to adequately explain how medical evidence supported the limitations contained in the RFC (*id.* at 8–11) and failed to

---

[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

properly assess Plaintiff's subjective reports (*id.* at 11–14).  The Court finds the ALJ erred

in her consideration of Plaintiff's subjective reports (i.e., symptoms) and does not address

Plaintiff's other argument.

V.    **Analysis**

     A.     **Symptoms**

Regarding the evaluation of his symptoms, Plaintiff raises two points of error.  (*Id.*)

First, Plaintiff argues the ALJ erred by not analyzing the factors set out in *Frey v. Bowen*,

816 F.2d 508, 517 (10th Cir. 1987), when discussing his failure to undergo neck surgery.

(*Id.* at 12.)  Second, Plaintiff argues the ALJ "failed to consider additional relevant factors

when evaluating [his] subjective statements," such as his "limited activities of daily living

or his work history."  (*Id.* at 12–14.)  The Court reverses on the first contention and does

not consider Plaintiff's remaining symptom-related arguments.

     B.     **Symptom Evaluation in General**

The regulations define "symptoms" as a claimant's "own description" of their

"physical or mental impairment."  20 C.F.R. § 404.1502(i).[5]  When evaluating symptoms,

the ALJ uses a two-step process.  *See* Social Security Ruling ("SSR") 16-3p, 2017 WL

5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.[6]  First, medical signs or

laboratory findings must show the existence of medical impairment(s) that result from

anatomical, physiological, or psychological abnormalities that could reasonably be

expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  Second, once such

impairment(s) are established, the ALJ must evaluate the intensity and persistence of the

---

[5] *See generally* 20 C.F.R. § 416.902 for Title XVI.
[6] *See generally* 20 C.F.R. § 416.929 for Title XVI.

symptoms so she can determine how they limit the claimant's capacity to work.  *Id.* § 404.1529(c)(1).

Factors the ALJ should consider as part of this evaluation include:  (i) daily activities; (ii) location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication; (v) treatment aside from medication; (vi) measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to the symptoms.  *Id.* § 404.1529(c)(3)(i)-(vii).  The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).  However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence [she] relies on" in the evaluation.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

That is not to say the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent.  SSR 16-3p, at *10.  Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

### C.    The *Frey* Factors

In *Frey*, the Tenth Circuit identified four factors to consider in "reviewing the impact of a claimant's failure to undertake treatment on a determination of disability," including "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Frey*, 816 F.2d at 517. The Commissioner argues these factors are inapplicable when "an ALJ evaluates the type of treatment a claimant needed as part of the evaluation of subjective complaints." (ECF No. 15 at 9 (citing *Qualls*, 206 F.3d at 1372–73).) This is not the case.

In *Qualls*, the Tenth Circuit stated that "*Frey* concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment," but indicated that *Frey* did not apply where the ALJ did not purport to deny benefits on this ground and, instead, "considered what attempts plaintiff made to relieve his pain . . . in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling." 206 F.3d at 1372. Recently, a panel of the Tenth Circuit noted that "*Qualls* suggests the ALJ did not need to consider the *Frey* factors because he considered [the claimant's] noncompliance only to evaluate her claims of disabling symptoms." *Allred v. Comm'r*, No. 22-4044, 2023 WL 3035196, at *3 (10th Cir. Apr. 21, 2023) (unpublished)[7] ("we have held that *Frey* applies when an ALJ denies benefits because of a claimant's treatment noncompliance, [but] not when an ALJ considers what efforts a claimant made to relieve pain to evaluate the veracity of a claim that the pain was disabling").

---

[7] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

However, the court found that to read *Qualls* that way would cause it to conflict with an earlier ruling: *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). *Id.* In *Thompson*, the Tenth Circuit held that "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility,[8] he or she should consider" the factors outlined in *Frey*. *Thompson*, 987 F.2d at 1490 (10th Cir. 1993) (quoting *Frey*, 816 F.2d at 517). Because *Thompson* predated *Qualls*, the *Allred* panel followed *Thompson*. 2023 WL 3035196, at *3 (citing *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1188 (10th Cir. 2020)).[9]

The Court finds *Allred* persuasive and agrees that it, too, is bound to follow *Thompson*. As such, the ALJ should have considered the *Frey* factors if she relied on Plaintiff's decision not to undergo treatment as part of her assessment of his symptoms.

### 1.    ALJ's discussion of surgery

The Commissioner argues that the ALJ, rather than denying Plaintiff's claims for a failure to undergo surgery, only "cited the *lack* of a need for surgery as one factor in assessing the severity of [Plaintiff's] condition." (ECF No. 15 at 9.) The Commissioner further reads the ALJ's decision as simply "stress[ing] that [Plaintiff's] doctor had said there was little likelihood that [surgery] would improve his condition." (*Id.* at 11 (citing R. 25).) The Commissioner's reading of the ALJ's decision is not reasonable.

The ALJ twice mentioned Dr. Toby Moore's discussion with Plaintiff of treatment options for his cervical spine issues. First, during the ALJ's recounting of evidence at the RFC stage, the ALJ noted that on August 18, 2022,

---

[8] The Social Security Administration has since eliminated use of the word "credibility" when referring to a symptom analysis. SSR 16-3p, at *2.

[9] "[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." *Crowson*, 983 F.3d at 1188 (quoting *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996)).

> Dr. Moore offered conservative and nonsurgical treatment option[s], physical therapy and referral to interventional pain management for cervical spine injections. Surgery and a C4–C7 anterior cervical discectomy and fusion (ACDF) was discussed, although this record indicates the claimant elected to continue with conservative management.

(R. 23 (appearing to refer to R. 367).)  Second, the ALJ raised surgery again when summarizing her reasoning for why the record did not support Plaintiff's subjective reports (i.e., symptoms).

> . . . His cervical pathology, fatigue and other aches and pains have been considered in limiting him to light work with occasional postural movements, but greater restrictions [are] not warranted based on . . . subjectively reported conditions of pain because the medical treatment records do not indicate [] this extreme of limitations to which he testified. Generally, he has not reported this degree of limitation or severity to his treatment records, or if he has, it is not memorialized in medical treatment records.
>
> In that vein, when asked at hearing about possible surgery, the claimant related that he had consulted with a neurosurgeon (Dr. Moore) who told him that there was so much instability in his neck that there was nothing that could be done, except possibly a risky surgery that was more likely to result in death than improvement.  Further, he averred that the doctor told him not to return unless he was willing to consider that surgery, because there was nothing else that could be done for him.  The claimant did state that he tried to return after this, but the doctor got angry and kicked him out of his office because he had told him not to come back.  <u>However</u>, Dr. Moore's treatment records <u>actually indicate</u> that surgical options were discussed with him, including a C4–7 anterior cervical discectomy and fusion (ACDF), and he <u>opted</u> to "continue with self-directed conservative management."  He was also told he could follow up as needed, if his condition was not improving (2F/12). . . . Overall, the claimant's allegations of inability to persist in a work setting, due to frequent absenteeism and/or the need for unscheduled work breaks to recline, are not consistent with the record.

(R. 25–26 (emphasis added).)  That is, the ALJ recounted Plaintiff's testimony that his doctor told him nothing could be done for his neck except a possibly risky surgery; that Plaintiff returned to the doctor to discuss surgery; and that the doctor kicked him out. Then, the ALJ discounted this testimony, noting, "[h]owever," the records "actually"

indicate that surgical options were discussed and Plaintiff "opted" for conservative management.[10]

The Court finds that this discussion constitutes a reliance on Plaintiff's decision not to undergo surgery as part of the ALJ's assessment of his symptoms. Under *Thompson*, the ALJ was, therefore, required to consider the *Frey* factors.

---

[10] The ALJ's rendition of Plaintiff's testimony and the medical records is not entirely accurate. At the hearing, it was the ALJ who raised the issue of surgery. "I was wondering, has anybody mentioned to you, in terms of your neck—are you considering surgery, or do you know if that's something your doctors are considering at all?" (R. 64.) Plaintiff then testified to having two appointments with Dr. Moore. At the first one, Plaintiff asserted, Dr. Moore told him, "normally, he could take a bone from my toe or a finger or even, like, a hip bone or something and put it up in my neck and patch me up a little bit to get me by, you know, five or ten years. But he said I don't even have anything stable enough for him to attach onto. He said, Brian, he goes, I hope that I don't ever see you again, but if it gets to be a point in life where you can't take it anymore, there is one surgery that I may consider doing. And it's got about a 20% chance of working, 80% chance of death. So he asked me not to come back unless I was ready to look at, you know --." (R. 64–65.) Plaintiff then testified that he "got to feeling bad" and "scheduled a second appointment with [Dr. Moore]. And he got mad and kicked me out of his office. What are you doing here? I already told you I can't help you. I can't help you. I can't help you." (R. 65.) After that, Plaintiff began looking for another doctor to provide a second opinion. (*Id.*)

Plaintiff's medical records reflect that he first visited Dr. Moore on May 3, 2022, where nonsurgical and surgical treatment options were discussed and where surgery "would likely include a C4–C7 ACDF." (R. 375.) At that point, Plaintiff "elected to proceed with self-directed conservative management." (*Id.*) Then, on August 18, 2022, Plaintiff returned to Dr. Moore, stating "the pain has been progressing and [he] would like to discuss surgery." (R. 362.) Treatment options were again discussed in detail, including nonsurgical and surgical treatment, with the surgery again likely including a C4–C7 ACDF. (R. 367.) Dr. Moore placed an order for external referral to physical therapy, and the notes indicate, after this discussion, Plaintiff elected to continue with self-directed conservative management. (*Id.*)

The ALJ's rendition of the record could be read as indicating that surgery was only discussed at the second appointment and that Plaintiff was invited to return but did not. Instead, it appears surgery was discussed at both appointments and that it was <u>Plaintiff</u> who returned the second time to discuss surgery, only deciding on the more conservative treatment after discussing his options with the doctor.

### 2. Failure to discuss the *Frey* factors

Having reviewed the ALJ's decision, the Court finds no indication that she considered all four *Frey* factors.

*(1) Whether the treatment at issue would restore claimant's ability to work.* At most, the ALJ noted Plaintiff's testimony that it was "a risky surgery that was more likely to result in death than improvement." (R. 25.)  However, as noted above, the ALJ then immediately discounted that testimony. (*Id.*)  There is nothing indicating the ALJ considered whether the surgery would actually restore Plaintiff's ability to work.

*(2) Whether the treatment was prescribed.* The ALJ did not consider whether the treatment was "prescribed," instead merely noting that it was "discussed." (*See* R. 23, 25. *Cf.* R. 22 (the ALJ, conversely, used the term "prescribed" when discussing whether other treatment, like assistive devices, was prescribed by a physician).)

*(3) Whether the treatment was refused.*  The ALJ considered whether the treatment was refused, noting Plaintiff "opted to 'continue with self-directed conservative management'" rather than pursue surgery.  (R. 25 (quoting R. 367).)

*(4) Whether the refusal was without justifiable excuse.* The ALJ appears to have considered why Plaintiff refused the surgery, noting his testimony (A) that it was risky and more likely to result in death and (B) that the doctor told him there was nothing that could be done.  (R. 25.)  The ALJ also appears to have considered whether the latter reason was justifiable, indicating her belief that it was contrary to the medical note that "he could follow up as needed, if his condition was not improving." (*Id.*)  The ALJ, however, does not appear to have considered whether Plaintiff's refusal based on risk was justifiable.

As noted above, the Commissioner takes the position that his ALJs are not required to consider the *Frey* factors in circumstances similar to those at issue here.  It appears the

ALJ below followed the Commissioner's position and did not attempt to consider each factor. This was error, and one the Court cannot find harmless. The Court is not in a position to consider the missing factors for the first time or to make any findings as to how the ALJ would have ruled had she considered them properly. *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). Thus, the undersigned joins other courts in emphasizing the necessity of considering the *Frey* factors when an ALJ assesses a claimant's symptoms and subjective complaints post-*Allred*.[11]

## VI.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is REVERSED AND REMANDED for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 29th day of May, 2025.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[11] *See Trisha G. v. O'Malley*, No. 2:22-CV-00762, 2024 WL 98438, at *3–5 (D. Utah Jan. 9, 2024) (reversing for failure to consider *Frey* factors when it was not apparent the ALJ assessed whether the claimant's treatment noncompliance was justifiable in light of full medical history); *Mize v. King*, No. CIV-23-374-GLJ, 2025 WL 484814, at *6 (E.D. Okla. Feb. 13, 2025) (reversing when ALJ did not consider *Frey* factors, noting only that "Claimant was stable when compliant with medications"); *Pease v. O'Malley*, No. CIV-24-53-SM, 2024 WL 3841249, at *2, *5 (W.D. Okla. Aug. 15, 2024) (reversing in case where ALJ did not undertake the *Frey* analysis but discounted the plaintiff's symptoms for not staying on medication as prescribed and not frequently visiting a counselor); *Ridenour v. Kijakazi*, No. CIV-23-438-SM, 2023 WL 8284400, at *4 (W.D. Okla. Nov. 30, 2023) (reversing for failure to consider possible reasons for noncompliance with treatment in symptom evaluation).